IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MONTERIA NAJUDA
ROBINSON,

     Plaintiff,

v.

ERIC HEINZE and PAMELA J.
DOYLE, as Administrator of the
Estate of Daniel Doyle,

     Defendants.

CIVIL ACTION FILE

NO. 1:18-cv-131-TCB

# O R D E R

This case comes before the Court on Defendants Eric Heinze and
Pamela J. Doyle's supplemental motion [330] for judgment on the
pleadings, motion [331] to stay, and renewed *Daubert* motions [334;
335; 336; and 337].

## I.    Background[1]

On August 5, 2016, a group of members in the Southeast Regional

Fugitive Task Force ("SERFTF"), coordinated by the U.S. Marshals

Service, attempted to execute two outstanding arrest warrants against

Jamarion Robinson. Relevant here, two of the involved officers were

Inspector Eric Heinze and Detective Daniel Doyle.[2]

What followed led to Robinson's death. After SERFTF arrived to

execute the warrants at Robinson's girlfriend's apartment, a gunfight

ensued. Eventually, after back-and-forth gunfire, the SERFTF officers

---

[1] The Court incorporates by reference the statement of facts in the Eleventh
Circuit's opinion and this Court's previous orders, as the motions at issue are
largely devoid of analysis tied to the details of this case. *See Robinson v. Sauls*, 46
F.4th 1332 (11th Cir. 2022).

[2] Heinze was a Deputy U.S. Marshal Inspector—that is, he was a federal
official at the time of the events in this case. Conversely, Doyle was a detective with
the Fulton County Police Department. However, Doyle was acting as a member of
SERFTF at the time of this incident. As Robinson's complaint indicates, the officers
assigned to SERFTF (including Doyle) "signed deputization forms" and, as a result,
Doyle acted "within the scope of his employment with the United States and under
color [of] federal law." [92] at 5, 19. As such, Doyle was acting as a federal officer for
purposes of this Court's analysis. *See* 28 C.F.R. § 0.112 (permitting the U.S.
Marshals Service to "deputize . . . state, or local law enforcement officer whenever
the law enforcement needs of the U.S. Marshals Service so require"); *see also
Georgia v. Heinze*, No. 1:21-cv-4457-VMC, 2022 WL 15265493, at *2 (N.D. Ga. Oct.
25, 2022) (finding, in a criminal case related to the facts here, that Kristopher
Hutchens, a Clayton County Sheriff's deputy, was specially deputized as part of
SERFTF and therefore a federal official).

deployed a flashbang grenade. More gunfire occurred, and Robinson eventually succumbed to his wounds.

This event led to the filing of this case by Robinson's mother. Relevant here, her complaint asserted several claims against the SERFTF officers, including (1) *Bivens* claims for excessive force under the Fourth Amendment and conspiracy, and (2) battery and wrongful death claims under state law pursuant to the Federal Tort Claims Act ("FTCA").

On February 24, 2021, the Court granted the SERFTF officers' motion for summary judgment related to Robinson's *Bivens* claim, finding that qualified immunity shielded each of the SERFTF officers from suit.

On March 30, after supplemental briefing, the Court granted the SERFTF officers' motion for summary judgment related to Robinson's remaining claims under state law for battery and wrongful death.

On August 30, 2022, the Eleventh Circuit affirmed in part and reversed in part this Court's previous orders on summary judgment. *See Robinson*, 46 F.4th at 1332. The court did not disturb this Court's grant

of summary judgment as to Robinson's state claims. However, relating to Robinson's *Bivens* claims, the Eleventh Circuit found that qualified immunity was proper in all respects except for Robinson's claims based on action taken by two of the SERFTF officers (Heinze and Doyle) after the flashbang grenade detonated.[3]

Accordingly, the Eleventh Circuit remanded this case for Robinson to pursue her *Bivens* claim against Heinze and Doyle (hereinafter "Defendants") for excessive force under the Fourth Amendment.

On October 26, Defendants filed a motion for judgment on the pleadings.[4] Defendants argue that while qualified immunity does not shield Defendants pursuant to the Eleventh Circuit's opinion, Robinson's complaint nonetheless must be dismissed because she cannot allege a *Bivens* claim against Defendants.

---

[3] The Eleventh Circuit only remanded Robinson's excessive force claim under *Bivens* but not her conspiracy claim, as she failed to present that claim on appeal.

[4] The motion is styled as a motion for summary judgment, motion for failure to state a claim, and motion for judgment on the pleadings. However, because the Court finds that a *Bivens* action does not exist, which concerns the motion for judgment on the pleadings, the Court need not discuss other reasons why the same result is necessary. Relatedly, while Defendants also filed a motion to stay and four *Daubert* motions, none will be addressed because each will be rendered moot by the disposition of this order.

On January 23, 2023, after various briefing extensions, the motion became ripe for this Court to review.

## II.    Legal Standard

A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial . . . ." FED. R. CIV. P. 12(c). A court may grant "[j]udgment on the pleadings . . . when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1273 (11th Cir. 2008) (citing *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001)).

In this determination, "we accept as true all material facts alleged in the non-moving party's pleading, and we view those facts in the light most favorable to the non-moving party." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014) (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)). But "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI*

*Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Thus, to survive a motion for judgment on the pleadings, a complaint must convey factual allegations that amount to "more than labels and conclusions" and "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## III. Analysis

Federal courts often deal with litigation arising under 42 U.S.C. § 1983. This statute "entitles an injured person to money damages if a *state* official violates his or her constitutional rights." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017) (emphasis added).

This case concerns a plaintiff alleging that two law enforcement agents violated her son's constitutional rights. At first blush that claim might appear to fall under § 1983. However, the critical fact of this case is that the law enforcement agents are U.S. Marshals—that is, neither of the Defendants are state officials. As a result, § 1983 is inapplicable.

Robinson therefore proceeds on a different theory of relief. She alleges a cause of action under *Bivens v. Six Unknown Named Agents of*

*Federal Bureau of Narcotics*, 403 U.S. 388 (1971), which is otherwise known as a *Bivens* claim.

As context, Congress passed § 1983 to provide a cause of action for harmed individuals. But "Congress did not provide a specific damages remedy for plaintiffs whose constitutional rights were violated by agents of the Federal Government." *Ziglar*, 137 S. Ct. at 1854.

This landscape changed in *Bivens*. There, the Supreme Court held that "even absent statutory authorization, it would enforce a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures." *Id.* (citing *Bivens*, 137 U.S. at 397).

Thus, in the context of *Bivens*, the Supreme Court found that the Fourth Amendment contained an implied cause of action against federal officials for unconstitutional conduct. This trend continued as the Supreme Court later found an implied cause of action under the Fifth Amendment's Due Process Clause and Eight Amendment's Cruel and Unusual Punishments Clause. *See Davis v. Passman*, 442 U.S. 228

(1979) (Fifth Amendment); *Carlson v. Green*, 446 U.S. 14 (1980) (Eighth Amendment).

However, for a plaintiff to state a cause of action for relief under *Bivens*, courts must ask more than what constitutional right is at issue. Indeed, courts must first ask "whether the case presents 'a new *Bivens* context'—*i.e.*, is it 'meaningfully' different from the three cases in which the Court has implied a damages action." *Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022) (alterations in original) (quoting *Ziglar*, 137 S. Ct. at 1859–60).

If so, the Court must then consider whether "there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* (quoting *Ziglar*, 137 S. Ct. at 1858).

As an extension of the special factor inquiry, courts must also ask whether "Congress has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'" *Id.* at 1804 (quoting *Ziglar*, 137 S. Ct. at 1858) (other citation omitted).

Ultimately, the Supreme Court has stated that the three steps "resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id.* at 1803.

In this case, while the *Bivens* analysis ultimately boils down to a "single question," the Court will split its analysis into three parts: whether (1) this case presents a new *Bivens* context; (2) special factors weigh against a *Bivens* claim; and (3) alternative remedial structures counsel against a *Bivens* claim.

However, before the Court will do so, a wider view of *Bivens*-related precedent is necessary to understand the context in which this Court frames its analysis.

In the last five years, the Supreme Court in *Ziglar*, *Hernandez*, and *Egbert* made clear that federal courts cannot treat *Bivens* claims lightly. As explained in *Hernandez v. Mesa*, 140 S. Ct. 735 (2020), "*Bivens*, *Davis*, and *Carlson* were the products of an era when the Court routinely inferred 'causes of action' that were 'not explicit' in the text of

the provision that was allegedly violated." *Id.* at 741 (quoting *Ziglar*,

137 S. Ct. at 1855).

Now, the Supreme Court has "came to appreciate more fully the

tension between this practice and the Constitution's separation of

legislative and judicial power." *Id.* For this reason, the Supreme Court

has been "reluctant to create new causes of action" because "Congress is

best positioned to evaluate 'whether, and the extent to which, monetary

and other liabilities should be imposed upon individual officers and

employees of the Federal Government' based on constitutional torts."

*Id.* at 742 (quoting *Ziglar*, 137 S. Ct. at 1856).

Even more, "the Court has made clear that expanding the *Bivens*

remedy is now a 'disfavored' judicial activity." *Ziglar*, 137 S. Ct. at 1857

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Indeed, "for almost

40 years, [the Supreme Court has] consistently rebuffed requests to add

to the claims allowed under *Bivens*." *Hernandez*, 140 S. Ct. at 743

(citing nine Supreme Court cases refusing to extend *Bivens*); *see also*

*Dyer v. Smith*, 56 F.4th 271, 277 (4th Cir. 2022) (stating that *Egbert* "all

but closed the door on *Bivens* remedies."); *Silva v. United States*, 45

F.4th 1334, 1140 (10th Cir. 2022) ("[W]e are left in no doubt that expanding *Bivens* is not just a 'disfavored judicial activity,' it is an action that is impermissible in virtually all circumstances." (citation omitted)).

With this context in mind, and for the reasons explained below, the Court finds that Robinson cannot allege a *Bivens* claim. Accordingly, the Court will grant Defendants' motion for judgment on the pleadings and dismiss this case.

### A.    Whether This Case Presents a New *Bivens* Context

The first question when analyzing a *Bivens* claim is whether the case presents a new *Bivens* context. The Supreme Court has stated that

> [t]he proper test for determining whether a case presents a new *Bivens* context is as follows. If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new. Without endeavoring to create an exhaustive list of differences that are meaningful enough to make a given context a new one, some examples might prove instructive. A case might differ in a meaningful way because of [(1)] the rank of the officers involved; [(2)] the constitutional right at issue; [(3)] the generality or specificity of the official action; [(4)] the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; [(5)] the statutory or other legal mandate under which the officer was operating; [(6)] the risk of disruptive intrusion by the Judiciary into the functioning of

11

other branches; or [(7)] the presence of potential special factors that previous *Bivens* cases did not consider.

*Ziglar*, 137 S. Ct. at 1859–60.

At a more general level, a new context exists when a plaintiff's claim concerns a "meaningfully different" context. *Hernandez*, 140 S. Ct. at 743. Thus, this Court must look beyond "superficial similarities," *Egbert*, 142 S. Ct. at 1805, to assess the context of the claim.[5]

In *Bivens*, the facts of the case concerned an arrest conducted by federal narcotics agents without a warrant. The agents "manacled" the plaintiff at his apartment "in front of his wife and children, and threatened to arrest the entire family." 403 U.S. at 389.

Ultimately, based on a comparison to *Bivens* and an analysis of relevant factors mentioned in *Ziglar*, the Court finds that this case presents a new context.

---

[5] For example, while Robinson repeatedly states that this case does not present a new context because it concerns the Fourth Amendment like *Bivens*, the inquiry is not that simple. Indeed, while a factor to consider, "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez*, 140 S. Ct. at 743.

First, the facts of this case concern a gunfight between a fugitive and U.S. Marshals acting in execution of a warrant. This situation is unlike *Bivens*, where federal narcotics officers executed a warrantless arrest. As explained by another district court, *Egbert* makes clear that this fact alone presents a new *Bivens* context:

> To be sure, [the plaintiff's] claim possesses many factual similarities to those in *Bivens*. Both cases involved an arrest by federal agents, and both plaintiffs alleged unreasonable force during that arrest in contravention of the Fourth Amendment. But the Supreme Court has recently made clear that "superficial similarities" or even "almost parallel circumstances" are not necessarily sufficient to state a claim pursuant to *Bivens*. We conclude that [the plaintiff's] claim presents a new context because of at least one key factual difference: *Bivens* involved narcotics agents who arrested the plaintiff and searched the residence *sans* warrant; the defendants here acted pursuant to a valid arrest warrant after [the plaintiff] failed to report to [prison].

*Cienciva v. Brozowski*, No. 3:20-cv-2045, 2022 WL 2791752, at *9 (M.D. Pa. July 15, 2022) (quoting *Egbert*, 142 S. Ct. at 1805); *see also id.* (citing five other district courts that have also held that "the presence of a warrant is a crucial difference in the *Bivens* new-context analysis").

More critically, this case concerns a gunfight between a fugitive and U.S. Marshals, which differs greatly from the arrest in *Bivens*.

13

*Accord Bivins v. Rodriguez*, No. 2:18-cv-2671-JAM-DMC, 2020 WL 134115, at *4 (E.D. Cal. Jan. 13, 2020) (stating in the context of finding a new *Bivens* context that "*Bivens* is primarily, and very particularly, concerned with the warrantless search of a person. Plaintiff's complaint, by contrast, concerns the reasonableness of a seizure of a person by use of deadly force."), *report and recommendation adopted*, 2020 WL 2193259 (E.D. Cal. May 6, 2020). This case is therefore factually distinct from *Bivens* and presents a new context.

Second, the Defendants in this case (U.S. Marshals in a fugitive taskforce) differ from the federal narcotics agents in *Bivens*. In *Egbert*, the Supreme Court made clear that new *Bivens* contexts include cases that involve a "new category of defendants" because they represent "situations in which a court is not undoubtedly better positioned than Congress to create a damages action." 142 S. Ct. at 1803.

Robinson argues, quoting *Egbert*, that this distinction does not matter because the Supreme Court "has never . . . draw[n] artificial distinctions between line-level officers of the 83 different federal law enforcement agencies with authority to make arrests and provide police

protection." [338] at 3. However, as Defendants point out, this quote was made in Justice Sotomayor's opinion concurring in the judgment in part and dissenting in part—that is, it was not a binding statement of the Court. Rather, as discussed, that proposition was expressly disapproved by the majority opinion in *Egbert*.

Indeed, courts have routinely distinguished cases from *Bivens* based on the particular class of federal agents involved. *See, e.g.*, *Logsdon v. U.S. Marshal Serv.*, No. 21-cv-253-KHV, 2023 WL 205052, at *4 (E.D. Okla. Jan. 13, 2023) (finding that a plaintiff did not have a *Bivens* claim in part because Deputy U.S. Marshals are a new category of defendants); *Gilson v. Alvarez*, No. EP-21-cv-110, 2022 WL 2373866, at *5 (W.D. Tex. June 30, 2022) (stating, among other reasons why the case presented a new *Bivens* context, that "[u]nlike *Bivens*, the Defendant officers here are Border Patrol agents and not federal narcotics agents."); *Edwards v. Gizzi*, No. 20-cv-7371-KMK, 2022 WL 309393, at *7 (S.D.N.Y. Feb. 2, 2022) (distinguishing between the federal narcotics agents in *Bivens* and U.S. Marshals); *see also Mejia v. Miller*, 53 F.4th 501, 506 (9th Cir. 2022) ("The dissent in *Egbert* does

not appear to be wrong in inferring the Court now sees a new *Bivens* context even if only the officer's employing agency is different." (citation omitted)). The Court similarly finds that because U.S. Marshals are involved, this case differs from *Bivens*.

Because this case differs from *Bivens* by involving (1) the execution of a warrant, (2) a gunfight between officers and a fugitive, and (3) the presence of a new class of defendants, the Court finds that this case presents a new *Bivens* context.

### B.   Whether Any Special Factors Indicate That Robinson Cannot Allege a *Bivens* Claim

Because this "claim arises in a new context," the Court must ask whether any "special factors" indicate that a *Bivens* remedy is unavailable. *Egbert*, 142 S. Ct. at 1803. This analysis inherently blends into the last, and it requires the Court to ask "whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id.* Here, two special factors counsel against a *Bivens* remedy in this case.

First, the newness of the *Bivens* context in this case counsels against recognizing the claim. In *Egbert*, the Court quoted to *Hernandez*

*v. Mesa*, 885 F.3d 811, 818 (5th Cir. 2018) (en banc), *aff'd*, 140 S. Ct. 735 (2018), for the proposition that "[t]he newness of this 'new context' should alone require dismissal." 142 S. Ct. at 1804. Stated otherwise, if there is any "uncertainty" about the "systemwide consequence" of affording a *Bivens* claim against new defendants, that "alone" should foreclose relief. *Id.* at 1803–04 (internal quotation marks and citation omitted).

Here, recognizing a cause of action against U.S. Marshals might have consequences far beyond the boundaries of this case. For example, Defendants argue that such a decision "would impact the government's ability to recruit officers to participate in those task forces and affect how those task forces perform their duties." [350] at 11. *See Cienciva*, 2022 WL 2791752, at *11 ("The 'primary role and mission' of the Marshals is to 'provide for the security and to obey, execute, and enforce all orders of' the federal judiciary"; concluding that "[i]mplying a damages remedy for excessive force in [the plaintiff's] case is potentially harmful to the duty of the Marshals Service to make judgment calls

about the use of force needed to execute a judicially authorized arrest warrant." (quoting 28 U.S.C. § 566(a))).

Indeed, in *Ziglar*, the Supreme Court explained why implying a damages remedy (in cases such as this) presents questions better fit for Congress to address:

> It is true that, if equitable remedies prove insufficient, a damages remedy might be necessary to redress past harm and deter future violations. Yet the decision to recognize a damages remedy requires an assessment of its impact on governmental operations systemwide. Those matters include the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself when the tort and monetary liability mechanisms of the legal system are used to bring about the proper formulation and implementation of public policies. These and other considerations may make it less probable that Congress would want the Judiciary to entertain a damages suit in a given case.

137 S. Ct. at 1858. The Court finds that the analysis in *Ziglar* applies equally to this case, and this special factor accordingly counsels against Robinson's *Bivens* claim.

Second, like *Egbert*, this case concerns questions of national security and public safety, which also cuts against recognizing a *Bivens* claim. In *Egbert*, the Court considered a border patrol agent's actions

taken pursuant to his job responsibilities. However, because the agent "was carrying out Border Patrol's mandate," and "[b]ecause 'matters intimately related to foreign policy and national security are rarely proper subjects for judicial intervention,' we reaffirm that a *Bivens* cause of action may not lie where, as here, national security is at issue." 142 S. Ct. at 1804–05 (alteration omitted) (quoting *Haig v. Agee*, 453 U.S. 280, 292 (1981)).

*Egbert*'s analysis applies to this case. Like border patrol agents who routinely face issues of security, the Defendants in this case were U.S. Marshals in a fugitive task force expressly carrying out a statutory mandate. *See* 28 U.S.C. § 566(e)(1)(B) ("The United States Marshals Service is authorized to investigate such fugitive matters, both within and outside the United States, as directed by the Attorney General."); 34 U.S.C. § 41503(a) (establishing "permanent Fugitive Apprehension Task Forces").

Additionally, the U.S. Border Patrol and U.S. Marshals are similarly situated. Indeed, the officers at issue here acted in pursuit of a fugitive. While Robinson summarily states that the events here "in a

metro Atlanta suburb ha[ve] absolutely nothing to do with national security," [338] at 3–4, that is not the case. To say that U.S. Marshals are less involved in national security and public safety than the U.S. Border Patrol is a comparison that holds no weight. *See Egbert*, 142 S. Ct. at 1805 ("[T]he Judiciary is comparatively ill suited to decide whether a damages remedy against any Border Patrol agent is appropriate" in the "national-security context."). Therefore, the Court finds that like *Egbert*, the presence of national security and public safety concerns counsel against recognizing a *Bivens* claim in this case.

In sum, there is more than "a single reason to pause before applying *Bivens*" in this case. *Id.* at 1803 (quotation omitted). Therefore, Defendants' motion for judgment on the pleadings will be granted.

## C.   Whether Alternative Remedial Structures Foreclose Robinson's *Bivens* Claim

Although the Court has already found that Robinson cannot allege a *Bivens* claim, the Court will nonetheless analyze whether the presence of alternative remedial structures would result in the same conclusion. *See Ziglar*, 137 S. Ct. at 1858 ("[I]f there is an alternative

remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action.").

In *Egbert*, the Supreme Court clarified that the alternative remedial scheme analysis should not focus on whether a *Bivens* action would disrupt an alternative scheme, or if a *Bivens* claim would help address an uncompensated wrong. "Rather, the court must ask only whether it, rather than the political branches, is better equipped to decide whether existing remedies should be augmented by the creation of a new judicial remedy." *Egbert*, 142 S. Ct. at 1804 (quotation omitted). Here, two alternative remedial structures counsel against recognizing a *Bivens* claim in this case.

First, the U.S. Marshal Service has oversight procedures as a measure against unconstitutional conduct. As in *Egbert* with the U.S. Border Patrol, the U.S. Marshal Service is statutorily obligated to investigate "alleged improper conduct on the part of U.S. Marshals Service personnel." 28 C.F.R. § 0.111(n).[6] Because the focus of this

---

[6] Defendants note that the U.S. Marshal Service provides a grievance form on its public website by which anyone may submit a complaint of wrongdoing. It also

inquiry "is whether the Government has put in place safeguards to prevent constitutional violations from recurring," not whether "a given remedy is adequate," the Court finds that this remedial process "is sufficient" to secure deterrence from unconstitutional behavior. *Egbert*, 142 S. Ct. at 1806–1807 (quotation omitted); *see also Cienciva*, 2022 WL 2791752, at \*10 ("Having thoroughly reviewed the *Egbert* decision, we are constrained to conclude that an alternative available remedy exists for [the plaintiff] within the legal mandates of the United States Marshals Service, in much the same way the Court concluded one [existed in *Egbert*]."); *Goodale v. Seguin*, No. SA-22-cv-31-XR, 2022 WL 17084400, at \*5 (W.D. Tex. Nov. 17, 2022) (finding "that alternate mechanisms exist to investigate and deter wrongdoing by United States Marshals.").

Second, the Federal Tort Claims Act ("FTCA") also provides an alternative remedial structure that counsels against the *Bivens* claim in this case. The FTCA permits plaintiffs to allege intentional torts

---

notes that a similar process is available by complaint to the DOJ, which is obligated to investigate alleged wrongdoing under the Inspector General Act of 1978.

against U.S. law enforcement officers. Here, Robinson did so, and this
Court eventually dismissed the claims on summary judgment, which
the Eleventh Circuit affirmed on appeal. *See Robinson*, 46 F.4th at 1339
n.4.

Whether the FTCA foreclosed *Bivens* claims was initially unclear.
However, in recent years after the Supreme Court's decision in *Ziglar*,
more courts have found that—if nothing else—the application of the
FTCA is an additional reason against applying a *Bivens* claim in certain
cases. *See Ziglar*, 137 S. Ct. at 1858 (stating if Congress created "any"
process for relief, that counsels against a *Bivens* claim (citing
*Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 73–74 (2001)
(recognizing "that state tort law provided alternative means for relief"));
*see also Oliva v. Nivar*, 973 F.3d 438, 444 (5th Cir. 2020) (finding an
FTCA claim counseled against a plaintiff's excessive force claim under
*Bivens*); *Edwards*, 2022 WL 309393, at *9 (collecting other cases that
also came to the same conclusion about the FTCA and *Bivens* claims).
Likewise, the Court finds that the FTCA's application to this case is

another reason why the Court will grant Defendants' motion for judgment on the pleadings.

## IV.  Conclusion

For the foregoing reasons, the Court grants Defendants' motion [330] for judgment on the pleadings, and the case is accordingly dismissed. Defendants' *Daubert* motions [334; 335; 336; and 337] and motion [331] to stay are denied as moot. The Clerk is directed to close this case.

IT IS SO ORDERED this 3rd day of February, 2023.

Timothy C. Batten, Sr.
Chief United States District Judge